SH

**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Joseph Brummer, | No. CV 18-01146-PHX-DGC (JZB) |
| Plaintiff, | |
| v. | **ORDER** |
| Charles L. Ryan, et al., | |
| Defendants. | |

Plaintiff Joseph Brummer, who is currently confined in the Arizona State Prison Complex (ASPC)-Eyman, Browning Unit, has filed a pro se civil rights Complaint pursuant to 42 U.S.C. § 1983. Before the Court is Plaintiff's Motion for Preliminary Relief and Order (Doc. 9), which the Court construes as a motion for injunctive relief. The Court will deny the motion.

**I.     Background**

Plaintiff sued Defendants Arizona Department of Corrections (ADC) Director Charles L. Ryan; Special Services Unit (SSU) Correctional Officer Figueroa; ASPC-Tucson Deputy Wardens A. Jacobs, D. Stemple, and J. Mattos; and ADC Security Operations Administrator Ron Towles for violating his due process rights. Plaintiff alleges the following facts: Plaintiff was validated as a member of the Aryan Brotherhood in 2009 and confined in Security Threat Group (STG) maximum custody. Plaintiff subsequently completed the STG step down program (SDP) and was placed in a close custody unit, with

a lower custody level. In September 2017, Defendant Figueroa informed Plaintiff that his close custody status was being revoked, but refused to give Plaintiff the required form. A hearing was held before Defendants Jacobs, Stemple, and Mattos on October 5, 2017, and Plaintiffs' close custody status was revoked. Plaintiff was not given a copy of the hearing notification, informed of the evidence against him, or provided with a written result of the hearing. Plaintiff appealed the revocation to Defendants Towles and Ryan, and they denied his appeals. As a result, Plaintiff was returned to maximum custody. On screening pursuant to 28 U.S.C. 1915A(a), the Court determined that Plaintiff stated a due process claim against Defendants and ordered them to answer. (Doc. 7.)

**II.      Legal Standards**

    **A.      Injunctive Relief**

"A preliminary injunction is 'an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion.'" *Lopez v. Brewer*, 680 F.3d 1068, 1072 (9th Cir. 2012) (quoting *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (per curiam); *see also Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008) (citation omitted) ("[a] preliminary injunction is an extraordinary remedy never awarded as of right"). A plaintiff seeking a preliminary injunction must show that (1) he is likely to succeed on the merits, (2) he is likely to suffer irreparable harm without an injunction, (3) the balance of equities tips in his favor, and (4) an injunction is in the public interest. *Winter*, 555 U.S. at 20. "But if a plaintiff can only show that there are 'serious questions going to the merits'—a lesser showing than likelihood of success on the merits—then a preliminary injunction may still issue if the 'balance of hardships tips sharply in the plaintiff's favor,' and the other two *Winter* factors are satisfied." *Shell Offshore, Inc. v. Greenpeace, Inc.*, 709 F.3d 1281, 1291 (9th Cir. 2013) (quoting *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011)). Under this serious questions variant of the *Winter* test, "[t]he elements . . . must be balanced, so that a stronger showing of one element may offset a weaker showing of another." *Lopez*, 680 F.3d at 1072.

Regardless of which standard applies, the movant "has the burden of proof on each element of the test." *See Envtl. Council of Sacramento v. Slater*, 184 F. Supp. 2d 1016, 1027 (E.D. Cal. 2000). Further, there is a heightened burden where a plaintiff seeks a mandatory preliminary injunction, which should not be granted "unless the facts and law clearly favor the plaintiff." *Comm. of Cent. Am. Refugees v. INS*, 795 F.2d 1434, 1441 (9th Cir. 1986) (citation omitted).

The Prison Litigation Reform Act imposes additional requirements on prisoner litigants who seek preliminary injunctive relief against prison officials. It requires that any injunctive relief be narrowly drawn and the least intrusive means necessary to correct the harm be imposed. 18 U.S.C. § 3626(a)(2); *see Gilmore v. People of the State of Cal.*, 220 F.3d 987, 999 (9th Cir. 2000).

**B.  Due Process**

"Under the Fourteenth Amendment's Due Process Clause, a prisoner is entitled to certain due process protections when he is charged with a disciplinary violation." *Serrano v. Francis*, 345 F.3d 1071, 1077-78 (9th Cir. 2003) (citing *Wolff v. McDonnell*, 418 U.S. 539, 564-71 (1974)). "Prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." *Wolff*, 418 U.S. at 555-56. To determine whether a procedural due process violation has occurred, a court engages in a two-step analysis. First, a court looks to whether the person possesses a constitutionally-cognizable liberty interest with which the state has interfered. *Sandin v. Conner,* 515 U.S. 472, 485-87 (1995). Second, if the state has interfered with a liberty interest, a court looks to whether this interference was accompanied by sufficient procedural and evidentiary safeguards. *Ky. Dep't of Corr. v. Thompson,* 490 U.S. 454, 460 (1989).

It is well-settled that placement in maximum security segregation units implicates a liberty interest requiring due process protections. *Wilkinson v. Austin*, 545 U.S. 209, 224 (2005). A prisoner may be deprived of his liberty interest as long as he is accorded the proper procedural protections. For the initial decision to place a prisoner in maximum

1 custody, due process is generally satisfied if the prisoner is given notice of the factual basis
2 for the placement and an opportunity to be heard. *Id.* at 225-27; *Hewitt v. Helms*, 459 U.S.
3 460, 476 (1983).

**III. Motion for Preliminary Injunction**

**A. Plaintiff's Contentions**

Plaintiff seeks an order from the Court directing Defendants to transfer him from the maximum custody Browning Unit to a close custody unit. (Doc. 9 at 1.) Plaintiff asserts that on September 8, 2017, Defendant Figueroa informed him that his close custody status was being revoked, but he never received notice of the charges against him or a written result of the SDC revocation hearing. (Doc. 1 at 6; Doc. 9 at 1.) Plaintiff states that while he was housed in close custody, he "enjoyed contact visits with his wife and family, food visits, phone calls each and every day, outside recreation in the sunlight, a job and all the benefits received by the ADC General Population." (Doc. 1 at 6.) In contrast, Plaintiff states that in the Browning maximum custody unit he "remains housed in a window less [sic] super max cell 24 hours a day [and is] separated from contact visits with his family and [is] subjected to glass barriers between he and his family." (Doc. 9 at 2.) Plaintiff also asserts that "[t]he archaic history of super max prisons is well documented" and that "[l]ong term confinement in super max prisons cause [sic] serious mental fatigue, sensory deprivation, vision damage, damages health, cause break down in family relations and the history goes on and on." (Doc. 9 at 2–3.)

**B. Defendants' Response**

Defendants have presented evidence that on September 8, 2017, Plaintiff signed a Form No. 2A, which states, in part:

> This is to confirm that effective, [September 8, 2017], you are assigned to Investigative Detention. This action is being taken because you are considered a suspect in an offense occurring within the institution that is triable under the criminal laws of the state of Arizona, or have been charged with an offense that could result in your being charged with a major disciplinary violation and which requires your detention until an investigation is complete.

(Doc. 14-2 at 4 (Defs.' Ex. C).) The form does not state the specific charges against Plaintiff. (*See id.*) Defendants argue that the Form No. 2A, combined with Defendant Figueroa's statement to Plaintiff that his SDP status was being revoked, satisfied the due process notice requirement. (Doc. 14 at 3–4.)

Defendants also provided a copy of a Result of STG Validation Hearing Form, signed by Plaintiff on October 5, 2017, which states that Plaintiff's validation packet had been reviewed and that it contained sufficient evidence to validate Plaintiff as a member of the Aryan Brotherhood. (Doc. 19.) In the evidentiary portion of the form, it was noted that:

> The [hearing committee][1] has determined the evidence submitted by Tucson SSU is sufficient for revocation from the step-down program. It should be noted; during the revocation hearing Inmate Brummer 160622 stated to the [hearing committee] that he has maintained association with known STG Aryan Brotherhood members/associates throughout his time in the step-down program.

(*Id.*) Plaintiff signed the form and indicated that he wished to appeal the committee's decision. (*Id.*) Plaintiff appealed the revocation decision the following day. (Doc. 14-2 at 6–9 (Defs.' Ex. D).)

### C. Analysis

On these facts, Plaintiff has established a likelihood of success on the merits of his due process claim. The available record shows that he did not receive notice of the specific charges against him prior to his SDP revocation hearing. Contrary to Defendants' arguments, Form No. 2A does not contain sufficient details to inform Plaintiff of the specific reasons why his SDP status was being revoked and does not provide any information regarding exactly what Plaintiff did to put his SDP status in jeopardy. Likewise, the vague description of Defendant Figueroa's September 2017 conversation

---

[1] The revocation hearing committee was comprised of Defendants Jacobs, Stemple, and Mattos. (Doc. 1 at 6.)

- 5 -

with Plaintiff is insufficient to satisfy the notice requirement where there is no evidence that Defendant Figueroa informed Plaintiff of the charges against him.

Although it is a close question given the scant evidence, the Court also finds that Plaintiff has shown a likelihood of irreparable harm where he attests under penalty of perjury that as a result of his confinement in maximum custody, he "is subject to sensory deprivation and mental anguish." (Doc. 22 at 5.) *See* Fed. R. Civ. P. 56(c)(4); *S. Cal. Housing Rights Ctr. v. Los Feliz Towers Homeowners Ass'n*, 426 F. Supp. 2d 1061, 1070 (C.D. Cal. 2005) (declarant has personal knowledge of her own symptoms); *see also Thomas v. Garcia*, 1:08-cv-00689-JLT (PC), 2013 WL 3773861, at *11 (E.D. Cal. July 17, 2013) (a party may testify as to what he felt when injured, how the injury affects him now and impacts his life, and any other information within his own personal knowledge based upon his own perceptions).

Notwithstanding, Plaintiff is not entitled to injunctive relief because he has not clearly demonstrated that the balance of hardships tips in his favor. Although being confined in the Browning unit imposes a serious hardship, Defendants would also face serious hardship if the Court ordered them to transfer Plaintiff to a lower security level after he has been found guilty of violating the terms of the SDP by continuing to associate with known STG members and where this decision has been upheld through the administrative appeal process. (*See* Doc. 1 at 7; Doc. 19.) An injunction would interfere with Defendants' ability to maintain the security classification system and their ability to ensure that high-risk prisoners are separated from lower security level prisoners. Because both parties would face serious hardship if the Court ruled against them, Plaintiff has not shown that the balance of equities tips in his favor.

Additionally, Plaintiff has not demonstrated that an injunction would be in the public interest. Although it is always in the public interest to prevent the violation of a party's constitutional rights, *see Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012), courts "should pay particular regard for the public consequences in employing the extraordinary remedy of injunction[,]" *Winter*, 555 U.S. at 376–77 (quoting *Weinberger*

*v. Romero-Barcelo*, 456 U.S. 305, 312 (1982)). Special consideration is warranted when the requested injunction would affect the operation of a prison – a setting where courts must "give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the relief." 18 U.S.C. § 3626(a)(1). Matters of prison security and public safety are best served by prisons managed within the discretion of prison officials. *Bell v. Wolfish*, 441 U.S. 520, 540 (1979). "The public interest inquiry primarily addresses impact on non-parties rather than parties." *Bernhardt v. L.A. Cty.*, 339 F.3d 920, 931 (9th Cir. 2003) (citation omitted).

Defendants argue that "[i]gnoring the determinations of a hearing designed to weigh the evidence of STG activity would unfairly jeopardize institutional security." (Doc. 14 at 6.) In response, Plaintiff summarily argues that the "[t]he balance of hardships and public interests are in Plaintiff's favor," which is insufficient to meet his burden on this prong on the preliminary injunction test. (Doc. 22 at 5.) The non-parties who would be impacted by the requested relief are prisoners and staff who have a safety and security interest in prisoners being assigned to housing that corresponds to their determined security level.

Finally, there is heightened scrutiny where the movant seeks a preliminary injunction that alters rather than maintains the status quo. *Dahl v. HEM Pharms. Corp.*, 7 F.3d 1399, 1403 (9th Cir. 1993) (holding that mandatory, as opposed to prohibitory, injunctions are subject to heightened scrutiny). The Ninth Circuit has held that this type of mandatory injunctive relief is disfavored and should be denied unless the facts and law clearly favor the movant. *Anderson v. United States*, 612 F.2d 1112, 1114 (9th Cir. 1979) (citations omitted). Applying this heightened scrutiny to the available record, Plaintiff's allegations do not warrant a mandatory preliminary injunction, especially where it would possibly require the Court to involve itself in prison housing assignments and the prison's security classification process.

On this record, where the balance of hardships does not tip in Plaintiff's favor and the requested injunctive relief is not in the public interest, Plaintiff has not made the

requisite showing for a preliminary injunction, particularly where he seeks a mandatory injunction. Plaintiff's request for an order directing that he be transferred out of his current housing unit will denied.

**IT IS ORDERED** that the reference to the Magistrate Judge is withdrawn as to Plaintiff's Motion for Preliminary Relief and Order (Doc. 9), and the Motion is **denied**.

Dated this 1st day of May, 2019.

*David G. Campbell*
David G. Campbell
Senior United States District Judge